# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42782

|  |  |  |
|---|---|---|
| ROY GREEN, | ) | |
| | ) | |
|    Claimant-Respondent, | ) | |
| | ) | **Boise, December 2015 Term** |
| v. | ) | |
| | ) | |
| ROY GREEN, dba ST. JOES SALVAGE | ) | **2016 Opinion No. 48** |
| LOGGING, Employer, and TRAVELERS | ) | |
| INDEMNITY COMPANY, Surety, | ) | **Filed: April 26, 2016** |
| | ) | |
|    Defendants-Respondents, | ) | **Stephen Kenyon, Clerk** |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF IDAHO, INDUSTRIAL | ) | |
| SPECIAL INDEMNITY FUND, | ) | |
| | ) | |
|    Defendant-Appellant. | ) | |
| | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>.

Jones, Brower & Callery, LLP, Lewiston and Mallea Law Offices, Meridian, for appellant. Kenneth Mallea argued.

Bowen & Bailey, LLP, Boise, for respondents St. Joes Salvage Logging and Travelers Indemnity Company. William Scott Wigle argued.

Starr Kelso Law Offices, Coeur d'Alene, for respondent Green.

_____

HORTON, Justice.

The Industrial Special Indemnity Fund (ISIF) appeals a decision of the Industrial Commission in which the Commission concluded that ISIF must pay a portion of Roy Green's disability benefits because Green had a pre-existing condition. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 2006, Green was logging alone when a tree that he estimates weighed 1700 pounds fell on him, striking him on his hardhat (the 2006 Accident). The accident occurred after

1

another tree that he had just felled knocked the culpable tree loose. Green avoided being crushed only because of the presence of a nearby stump. When Green came to, he found that his legs were tingling, he had little sensation and difficulty walking. Green managed to drive to St. Maries to seek medical treatment.

After receiving treatment from various physicians and completing an Independent Medical Evaluation (IME), Green was referred to neurosurgeon Dr. Bret Dirks. Dr. Dirks diagnosed Green with a lower back injury that was directly related to the 2006 Accident. Dr. Dirks recommended surgery, and on February 21, 2007, Green underwent a bi-level lumbar fusion with decompression surgery from L3 to L5 (the Lumbar Fusion).

Following the surgery, Green expressed concern about "right-sided neck pain that goes into the right arm and makes it feel like jelly." MRI images of Green's cervical spine taken on July 11, 2006, and May 23, 2007, showed, among other things, a bulging disk at C5–6. Dr. Dirks recommended an anterior cervical discectomy and fusion at C5–6 with plating and cadaver bone. Dr. Dirks attributed the need for this surgery to the 2006 Accident. On July 16, 2007, Green underwent cervical fusion surgery at C5–6 (the Cervical Fusion).

On October 30, 2006, Green filed a complaint against St. Joes Salvage Logging (Employer) and Travelers Indemnity Company (Surety). Two years later, on November 6, 2008, Employer/Surety filed a complaint against ISIF. A hearing on the case began in August of 2012 before a worker's compensation referee assigned by the Commission. After the referee retired in April of 2013, the case was reassigned to the Commission.

The Commission issued a 115 page decision on January 29, 2014. The decision detailed Green's complicated medical, legal, and occupational history. The Commission found that Green had a 20% whole person permanent partial impairment (PPI) due to the Lumbar Fusion and a 25% PPI due to the Cervical Fusion resulting from the 2006 Accident. The Commission also determined Green was totally and permanently disabled under the odd-lot doctrine.

The Commission also considered whether Green had pre-existing injuries that subjected ISIF to liability. Employer/Surety's complaint against ISIF alleged Green had the following pre-existing injuries: (1) a T12–L1 fusion (the Thoracic Fusion), (2) a separation of the right shoulder, (3) bilateral carpal tunnel syndrome, and (4) multi-level cervical and lumbar disc disease and spinal degeneration. The Commission determined that Employer/Surety had failed to establish ISIF liability for the pre-existing conditions, with the exception of the Thoracic Fusion.

2

Green had the Thoracic Fusion surgery in January of 2003. The injury which precipitated the surgery occurred while Green was cutting a limb off a tree. The Commission concluded that Green was "likely entitled to an impairment rating referable to the T12-L1 fusion and residuals. However, the record altogether fails to establish what that impairment might be." The Commission determined:

> The Commission recognizes its authority, as discussed in *Hartman v. Double L Manufacturing*, 141 Idaho 456, 111 P.3d 141 (2005), to request evidence on the issue of Claimant's pre-existing thoracic spine impairment, yet we are reluctant to do so when the parties, represented by experienced counsel, had ample opportunity to marshal such evidence prior to hearing. The issue was clearly noticed and the parties are well aware of the elements required to prove and calculate ISIF liability. However, we believe the facts of this case mandate an assessment of the extent and degree of Claimant's pre-existing thoracic impairment considering the overwhelming proof that Claimant suffered from a pre-existing impairment which would impact Employer/Surety and ISIF's liability. Justice demands that we request that the parties present additional evidence of Claimant's pre-existing thoracic spine condition. As in *Hartman* we deem it necessary to retain jurisdiction of this matter in order to allow the parties to adduce additional evidence on the following question:

> (1) What is the appropriate impairment rating for Claimant's pre-existing thoracic spine condition?

Thereafter, the parties submitted additional evidence, with Employer/Surety arguing the Thoracic Fusion resulted in a 20% PPI and ISIF arguing the Thoracic Fusion resulted in a 16% PPI. On November 26, 2014, the Commission issued its Order on ISIF Liability. The Commission found Employer/Surety's PPI rating of 20% to be more credible. Thus, the Commission determined Green's impairments totaled 65% (20% for the Lumbar Fusion, 25% for the Cervical Fusion, and 20% for the pre-existing Thoracic Fusion). Using the formula from *Carey v. Clearwater Cnty. Rd. Dep't*, 107 Idaho 109, 686 P.2d 54 (1984), the Commission determined Employer/Surety was responsible for 69.23% of Green's physical impairment.

Further, the Commission declined to reconsider issues that ISIF had tried to raise relating to its January 29, 2014, decision, including a challenge to the Commission's decision to retain jurisdiction. The Commission held that it could not reconsider these issues because neither party had filed a timely motion for reconsideration under Idaho Code section 72-718.

On December 23, 2014, ISIF timely appealed from the November 26, 2014 order.

3

## II.     STANDARD OF REVIEW

"When reviewing a decision by the Industrial Commission, this Court exercises free review over the Commission's conclusions of law, but will not disturb the Commission's factual findings if they are supported by substantial and competent evidence." *Knowlton v. Wood River Med. Ctr.*, 151 Idaho 135, 140, 254 P.3d 36, 41 (2011) (citing I.C. § 72-732). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Products, Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003). "The interpretation of a statute is a question of law over which this Court exercises free review." *Williams v. Blue Cross of Idaho*, 151 Idaho 515, 521, 260 P.3d 1186, 1192 (2011).

The Commission's decision to retain jurisdiction to allow parties to submit additional evidence is reviewed for an abuse of discretion.[1] "In determining whether the Commission has abused its discretion, this Court employs a three-part test: (1) whether the Commission correctly perceived the issue as one of discretion, (2) whether it acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it, and (3) whether it reached its decision by an exercise of reason." *Super Grade, Inc. v. Idaho Dep't of Commerce & Labor*, 144 Idaho 386, 390, 162 P.3d 765, 769 (2007).

## III.     ANALYSIS

The issues presented in this appeal are whether: (1) ISIF timely appealed, (2) the Commission abused its discretion by retaining jurisdiction, (3) the Commission erred in determining the elements of ISIF liability were established, and (4) this Court may address Employer/Surety's claim that the Commission erred by not including a 5% pre-existing lumbar impairment in addition to the 20% impairment attributed to the Thoracic Fusion. We address these issues in turn.

**A.  ISIF timely appealed.**

---

[1] This is the first time we have identified the applicable standard of review in this particular circumstance. We find an abuse of discretion standard to be applicable for two reasons. First, the applicable statute, Idaho Code section 72-714(3), provides: "The commission, or member thereof, or a hearing officer, referee or examiner, to whom the matter has been assigned, shall make such inquiries and investigations as may be deemed necessary." The use of the word "may" demonstrates discretion. *Marcia T. Turner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 211, 159 P.3d 840, 848 (2007). Second, we have applied the standard in analogous situations. *See Flowers v. Shenango Screenprinting, Inc.*, 150 Idaho 295, 297, 246 P.3d 668, 670 (2010) (using a discretionary review standard to review the Commission's decision to not allow a supplemental hearing in the unemployment benefits context applicable under Idaho Code section 72-1368(7)); *Ball v. Daw Forest Products Co.*, 136 Idaho 155, 162, 30 P.3d 933, 940 (2001) (reviewing the Commission's decision not to retain jurisdiction when a claimant's condition was unstable for an abuse of discretion).

4

Employer/Surety contends ISIF did not timely appeal from the Commission's January 29, 2014, decision that established ISIF's liability for the Thoracic Fusion. Employer/Surety contends that ISIF's appeal is timely only as it relates to the Commission's November 26, 2014, decision that determined Green's Thoracic Fusion resulted in a 20% PPI. Thus, Employer/Surety maintains that ISIF may appeal the amount of impairment for the Thoracic Fusion but not its liability.

"[W]henever the Commission explicitly retains jurisdiction over a matter, that act by its very nature infers that there is neither a final determination of the case nor a final permanent award to the employee." *Reynolds v. Browning Ferris Indus.*, 113 Idaho 965, 969, 751 P.2d 113, 117 (1988). Here, the Commission explicitly retained jurisdiction, demonstrating that a final determination had not been made. The final decision determining the parties' rights was not entered until November 26, 2014. ISIF's notice of appeal was filed on December 23, 2014. We hold that ISIF timely appealed.[2]

**B. The Commission did not abuse its discretion when it retained jurisdiction to conduct a supplemental hearing.**

In its January 29, 2014, decision the Commission concluded that Green was "likely entitled to an impairment rating . . . . However, the record altogether fails to establish what that impairment might be." The Commission retained jurisdiction so that the parties could present additional evidence at a supplemental hearing so that it might determine the appropriate impairment rating for Green's pre-existing thoracic spine condition.

---

[2] We wish to note the apparent divergence between this Court and the Commission's understanding of the operation of Idaho Code section 72-718. The Commission expressed concern about a perceived discrepancy between a sentence in a recent decision from this Court and the statute. In *Vawter v. United Parcel Serv., Inc.*, 155 Idaho 903, 913, 318 P.3d 893, 903 (2014), this Court characterized a Commission order as "an interlocutory order that was *subject to modification until such time as a final, appealable order was entered.*" The Commission appears to believe this statement is at odds with Idaho Code section 72-718, which provides that a "decision of the commission, in the absence of fraud, shall be final and conclusive as to all matters adjudicated," subject to the parties' right to seek reconsideration within twenty days. The Commission stated: "It is difficult to square *Vawter* with the unambiguous provisions of Idaho Code § 72-718."

The Commission appears to have adopted the position that parties may not seek reconsideration of interlocutory rulings more than twenty days after they are made. The view we expressed in *Vawter* is based upon the final sentence of Idaho Code section 72-718, which provides that "[f]inal decisions may be appealed to the Supreme Court as provided by section 72-724, Idaho Code." Our view is that a decision is not final, and thus appealable, until all issues are resolved between all parties. Thus, in order to permit appeals of certain interlocutory decisions of the Commission, we have adopted I.A.R. 11(d)(2), authorizing expedited appeals from compensability determinations. The statement in *Vawter* to which the Commission has appeared to take exception is simply corollary to our view of what constitutes a final decision.

5

ISIF contends the Commission abused its discretion in its *sua sponte* decision to retain jurisdiction and instead should have held that Employer/Surety failed to establish ISIF liability because they did not meet their burden of providing evidence upon which an impairment rating determination could be made. Employer/Surety responds that this Court has frequently upheld the Commission's decision to allow the submission of additional evidence.

Idaho Code section 72-714(3) provides: "The commission, or member thereof, or a hearing officer, referee or examiner, to whom the matter has been assigned, shall make such inquiries and investigations as may be deemed necessary." "This Court has interpreted this statute as permitting the Commission to demand additional evidence if it finds that satisfactory evidence on a question of material fact is lacking." *Mazzone v. Texas Roadhouse, Inc.*, 154 Idaho 750, 759, 302 P.3d 718, 727 (2013).

"Since the inception of Idaho's Workers' Compensation Act, Industrial Commission proceedings have been informal and designed for simplicity; the primary purpose of these proceedings being the attainment of justice in each individual case." *Hartman v. Double L Mfg.*, 141 Idaho 456, 458, 111 P.3d 141, 143 (2005) (quoting *Hagler v. Micron Technology, Inc.*, 118 Idaho 596, 599, 798 P.2d 55, 58 (1990)). "[T]he Commission has historically been imbued with certain powers that specifically enable it to simplify proceedings and enhance the likelihood of equitable and just results." *Id.* (alteration original) (quoting *Hagler*, 118 Idaho at 599, 798 P.2d at 58). One such power is:

> When a claimant has failed or overlooked submitting evidence to establish the amount of compensation to which he is entitled, and there is no question but that he is entitled to compensation, then it is the duty of the Board to call attention to such failure and see to it that whatever evidence is available to establish such fact is presented, and then make the necessary findings of fact.

*Id.* (quoting *Watkins v. Cavanagh*, 61 Idaho 720, 722, 107 P.2d 155, 157 (1940)).

The Commission cited *Hartman* for its authority to retain jurisdiction to conduct an additional hearing. In *Hartman*, the Commission determined a claimant was totally and permanently disabled but it could not determine the extent of ISIF liability from the record. *Hartman*, 141 Idaho at 457, 111 P.3d at 142. "Because the Industrial Commission could not establish from the record the extent of ISIF's liability, it retained jurisdiction over the issue to enable the parties to resolve the matter or present additional evidence for consideration." *Id.* Although the appeal was resolved on procedural grounds, we also discussed the Commission's

authority to retain jurisdiction and took the occasion to "remind" the ISIF that the Commission "[c]learly" had authority to request additional evidence on an issue. *Id.*

The Commission perceived the issue as one of discretion, as reflected by its statement that "[t]he Commission recognizes its authority" to conduct an additional hearing in the interests of justice. The Commission acted within the bounds of its discretion and consistently with the applicable legal standard that we recognized in *Hartman.* The Commission reached its decision through an exercise of reason, recognizing the "overwhelming proof" that the Thoracic Fusion was a pre-existing condition as to which the parties had not provided adequate evidence to establish an impairment rating. The Commission determined that the interests of justice required that it receive additional evidence. For these reasons, we find no abuse of discretion.

ISIF contends that this appeal presents a situation similar to one in which we reversed the decision of the Commission. In *Deon v. H & J, Inc.*, 157 Idaho 665, 667, 339 P.3d 550, 552 (2014), this Court considered whether the Commission erred when it *sua sponte* invited the parties to submit briefing as to the effect an ISIF settlement should have on an employer and surety's liability despite the fact that those parties had failed to raise the defense on their own initiative. *Id.* This Court reversed, reasoning that "this Court takes a dim view of fact-finding tribunals raising defenses or theories *sua sponte*. Theories and defenses should be determined by the parties, not the tribunal" and that "a party is bound by the theory upon which it tries its case." *Id.* at 671, 339 P.3d at 556. The present case is different. Although the Commission ordered the parties to present additional evidence relating to an appropriate impairment rating for the Thoracic Fusion, it did not raise a new theory or defense. Thus, our holding in *Deon* is inapplicable.

ISIF also argues that the Commission erred by applying equitable concepts in its decision to retain jurisdiction. "[T]he Commission derives its authority solely from statutory law and does not have the ability to operate in the equitable realm." *Id.* at 669 n.2, 339 P.3d at 554 n.2. Here, the Commission operated under its statutory authority to conduct an additional hearing when additional inquiries are deemed necessary. *See Hartman*, 141 Idaho at 458, 111 P.3d at 143 (citing I.C. § 72-714(3)).

ISIF contends that retained jurisdiction is not available to relieve a surety from its failure to present evidence on an issue noticed for a hearing; rather, ISIF argues, retained jurisdiction is only available for the benefit of claimants. We disagree. Although ISIF reviews a series of cases

7

involving retained jurisdiction for the benefit of a claimant who has not failed to present sufficient evidence, ISIF fails to identify a decision wherein we have held that retained jurisdiction is only available to claimants. As we have previously noted, Commission proceedings are informal and designed for simplicity in order to attain justice in individual cases. *Hartman*, 141 Idaho at 458, 111 P.3d at 143. "The purpose of establishing ISIF was to relieve an employer of the burden of paying for total permanent disability compensation to an employee rendered totally and permanently disabled because of a pre-existing handicap coupled with a subsequent industrial injury." *Wernecke v. St. Maries Joint Sch. Dist. No. 401*, 147 Idaho 277, 285, 207 P.3d 1008, 1016 (2009). "The goal was to encourage employers to hire handicapped people by reducing the employer's obligation to pay for industrial accidents in the amount it would pay to an employee who had not been previously handicapped." *Id.* Allowing employers and sureties the opportunity to present evidence at a supplemental hearing when there is an obvious pre-existing condition is consistent with these policies.

For the foregoing reasons, we conclude that the Commission did not abuse its discretion when it retained jurisdiction to conduct a supplemental hearing.

## C. ISIF liability under Idaho Code section 72-332.

"ISIF liability is governed by Idaho Code section 72-332(1)." *Corgatelli v. Steel W., Inc.*, 157 Idaho 287, 293, 335 P.3d 1150, 1156 (2014). Idaho Code section 72-332 provides:

> (1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

> (2) "Permanent physical impairment" is as defined in section 72-422, Idaho Code,[3] provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to

---

[3] " 'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability." I.C. § 72-422.

obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment.

I.C. § 72-332. "Under § 72–332(1), a party attempting to prove ISIF liability must show: (1) 'there was a pre-existing impairment'; (2) 'the impairment was manifest'; (3) 'the impairment was a subjective hindrance'; and (4) 'the pre-existing impairment and the subsequent injury in some way combine to result in total permanent disability.' " *Corgatelli*, 157 Idaho at 293, 335 P.3d at 1156 (internal quotations original) (quoting *Vawter v. United Parcel Serv., Inc.*, 155 Idaho 903, 910, 318 P.3d 893, 900 (2014)). The party seeking to prove ISIF liability bears the burden of proof on these elements. *Id.*

ISIF advances two arguments in support of its claim that the Commission erred when it found that ISIF was liable to pay a portion of Green's benefits: (1) that determination of a specific impairment rating is an element required to establish ISIF liability, and (2) that the Commission's finding that Green's thoracic spine condition "combined with" the previous industrial injuries to render Green totally and permanently disabled is not supported by substantial and competent evidence.

1. **Employer/Surety was not required to establish an impairment rating as an element of its case prior to the Commission's January 29, 2014, decision.**

In its decision of January 29, 2014, the Commission concluded that Green was "likely entitled to an impairment rating . . . . However, the record altogether fails to establish what that impairment might be." Later, in its November 26, 2014, decision, the Commission found Green had an impairment rating of 20% for the Thoracic Fusion. ISIF argues the Commission erred in its original determination because an impairment rating is a required element for establishing ISIF liability since it is needed to apportion liability under the formula established in *Carey v. Clearwater Cnty. Rd. Dep't*, 107 Idaho 109, 686 P.2d 54 (1984).

Idaho Code section 72-424 provides: " 'Evaluation (rating) of permanent impairment' is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members." "Evaluation of permanent impairment is conducted through a rating analysis,

9

expressed as a percentage." *Vawter*, 155 Idaho at 909, 318 P.3d at 899 (discussing Idaho Code section 72-422). ISIF is correct that an impairment rating must be established in order to determine the extent of ISIF liability. *See Carey*, 107 Idaho at 118, 686 P.2d at 63 (providing a formula that requires pre-existing and incident impairment ratings to apportion liability to ISIF in odd-lot cases). However, ISIF does not direct us to statutory or decisional authority that explicitly states that the Commission cannot require the presentation of additional evidence to decide this issue. ISIF's claim is closely related to our previous analysis as to whether the Commission abused its discretion when conducting an additional hearing. As we have held, the Commission possessed the authority to require additional evidence. *See Hartman v. Double L Mfg.*, 141 Idaho 456, 458, 111 P.3d 141, 143 (2005). We hold that Employer/Surety was not required to establish an impairment rating as an element of its case prior to the Commission's January 29, 2014, decision.

**2. The Commission's finding that Green's Thoracic Fusion "combined with" the previous industrial injuries to render Green totally and permanently disabled is supported by substantial and competent evidence.**

ISIF challenges the Commission's factual findings and legal analysis regarding the fourth element of ISIF liability, the "combined with" element. ISIF argues the Commission did not follow the applicable "but for," causation standard. ISIF argues substantial and competent evidence does not support the Commission's conclusion that Green would not have been totally and permanently disabled *but for* the Thoracic Fusion.

"To satisfy the fourth requirement in Idaho Code section 72–332(1), 'the "but for" standard is the appropriate test to determine whether the total permanent disability is the result of the combined effects of the pre-existing condition and the work-related injury.' "[4] *Corgatelli*, 157 Idaho at 293, 335 P.3d at 1156 (quoting *Garcia v. J.R. Simplot Co.*, 115 Idaho 966, 970, 772 P.2d 173, 177 (1989)). "The 'but for' test requires a showing by the party invoking liability that the claimant would not have been totally and permanently disabled but for the preexisting impairment." *Id.*

---

[4] At oral argument, Employer/Surety questioned whether this Court should continue the application of the "but for" test because the test deviates from the "combined effects" language in Idaho Code section 72-332(1). "[W]hen there is controlling precedent on questions of Idaho law the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Asbury Park, LLC v. Greenbriar Estate Homeowners' Ass'n, Inc.*, 152 Idaho 338, 343, 271 P.3d 1194, 1199 (2012) (quoting *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho*, 142 Idaho 589, 592, 130 P.3d 1127, 1130 (2006)). We are unwilling to take up Employer/Surety's argument because we do not have briefing from the parties on this issue.

In the present case, the Commission employed the correct test. The Commission's decision began with a correct statement of the test—that "Employer/Surety bears the burden of demonstrating that but for the pre-existing conditions, Claimant would not be totally and permanently disabled following the work accident." The Commission explicitly asked the proper question, whether Green's current total and permanent disability "obtains *solely* from the combined effects of the work accident and Claimant's pre-existing impairments." The Commission found the opinions from two experts— Dr. William Ganz and Dr. John McNulty— to be particularly persuasive. In a report dated October 1, 2008, Dr. Ganz, the physician who performed Green's Thoracic Fusion, opined on the impact of the fusion on the injuries attributable to the 2006 Accident:

> The patient specifically asked me whether I would recommend that he return to logging again, and my recommendation is that he should not return to logging or heavy labor again because of his prior lumbar fusion and then the fusion that I performed at the central disc herniation of T12-Ll. The only motion segment that remains in his back is at Ll-2 and L2-3, and with heavy work, those will certainly begin to fail and most likely will require surgery in the future.

Likewise, Dr. McNulty offered a similar opinion:

> I have reviewed the FCE[5] and agree with the findings. Mr. Green has a fusion at T12-Ll and L3-5. Because of those fusions, he has increased stress between L1 and 3. He should not engage in heavy physical activities such as logging. He is more suited to work in a light duty job category as outlined in the FCE.

The Commission rejected ISIF's argument that the 2006 Accident, standing alone, rendered Green totally and permanently disabled. The Commission found that evidence indicating that Green was unhampered prior to the 2006 Accident was not credible. The Commission found the testimony of two vocational rehabilitation consultants, Dr. Nancy Collins and Dan Brownell, to be more credible in determining that Green's Thoracic Fusion had limited his ability to find employment.

ISIF focuses on two sentences in the Commission's decision to argue the Commission failed to apply the "but for" test. Those two sentences are:

> Therefore, per Drs. Ganz and McNulty, the fact that Claimant has a preexisting T12-Ll fusion increases the risk that he will have further problems from L3-5 fusion unless he observes certain prophylactic limitations/restrictions. We believe this demonstrates that Claimant's pre-existing thoracic spine condition does

---

5 FCE refers to a Functional Capacity Evaluation performed by Pinnacle Physical Therapy and Sports Medicine.

combine with the effects of the work accident to contribute to Claimant's total and permanent disability.

While these two sentences do not use the proper "but for" test language, the whole of the Commission's decision on this issue clearly employs the correct test.

ISIF also contends the Commission's decision is not supported by substantial and competent evidence because a physician did not give expert testimony on the "but for" causation issue. "Claimants must prove causation with expert medical testimony, but the Commission may consider other evidence as well." *Hope v. Indus. Special Indemn. Fund*, 157 Idaho 567, 572, 338 P.3d 546, 551 (2014). The Commission cannot "inject its own unqualified medical opinion to draw a conclusion from the evidence." *Corgatelli v. Steel W., Inc.*, 157 Idaho 287, 297, 335 P.3d 1150, 1160 (2014). There is no requirement that a precise "but for" question be directed to a physician as a prerequisite to ISIF liability. The issue whether a total permanent disability is the result of the combined effects of a pre-existing and work-related injury is more expansive than a simple medical inquiry because a determination of total permanent disability necessarily takes into account non-medical factors. *See* I.C. § 72-430. Dr. Ganz and Dr. McNulty established that, because of Green's Thoracic Fusion and the other fusions, there are only two small motion segments left in his spine that will quickly fail with heavy lifting. The Commission connected this medical evidence with testimony from vocational rehabilitation experts to determine that, but for Green's pre-existing Thoracic Fusion, he would not be totally and permanently disabled. We hold that the Commission's finding that Green's thoracic spine condition "combined with" the previous industrial injuries to render Green totally and permanently disabled is supported by substantial and competent evidence.

**D. Employer/Surety's failure to cross-appeal precludes our consideration of an issue they wish for this Court to address on appeal.**

Surety/Employee contends the Commission erred in failing to give recognition to a 5% pre-existing lumbar impairment that was recognized in two lump sum agreements that were approved by the Commission in 1988 and 2005. They argue the Commission erred by not including the pre-existing lumbar impairment in addition to the 20% impairment attributed to the Thoracic Fusion. ISIF responds that this issue is not properly before this Court because Employer/Surety failed to cross-appeal.

ISIF is correct. "In Idaho, a timely notice of appeal or cross-appeal is a jurisdictional prerequisite to challenge a determination made by a lower court. Failure to timely file such a

notice shall cause automatic dismissal of the issue on appeal." *Hamilton v. Alpha Servs., LLC*, 158 Idaho 683, 693, 351 P.3d 611, 621 (2015) (quoting *Miller v. Bd. of Trustees*, 132 Idaho 244, 248, 970 P.2d 512, 516 (1998)). Here, Employer/Surety seeks affirmative relief, asking that ISIF be required to bear an increased share of Green's disability benefits. Because Employer/Surety failed to fulfill the jurisdictional prerequisite of filing a cross-appeal, we may not address this issue on appeal.

## IV. CONCLUSION

We affirm the Commission's decision. Given that both parties prevailed in part on claims advanced in this appeal, we do not award costs on appeal.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.